[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 22-10997

Non-Argument Calendar

————————————

JEREMY WAYNE WILLS,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-00872-NAD

————————————

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Jeremy Wills appeals the district court's order affirming the Social Security Administration ("SSA") Commissioner's denial of his application for disability insurance benefits ("DIB"). Wills argues that the district court erred in affirming the administrative law judge's ("ALJ") denial of his DIB application, arguing that the ALJ improperly applied the pain standard.  For the following reasons, we affirm.

## I.    Background

In July 2017, Wills applied for DIB, alleging that his disability began on December 15, 2015.  His initial application was denied, but he requested a hearing and appeared before an ALJ in May 2019.  The ALJ admitted Wills's medical records, which included the following.

In 2008, Wills had back surgery.  In late 2015, he began to have back pain that "started slowly" but, by December 2015, became "so bad" that he allegedly had difficulty lifting or standing on his left leg.  In December 2015, a doctor found that Wills's condition was normal aside from some "lumbar pain."  The doctor suggested Wills undergo physical therapy and receive an epidural injection.

Wills continued to have back problems that caused him pain that he rated ten on a scale from one to ten.  He then had another

back surgery in May 2016. Following his second surgery, Wills had several post-operative visits during which he explained that his symptoms had improved, and he was not experiencing much pain. However, his back pain eventually returned, and he had a third back surgery in March 2017. In July 2017, Wills went to the doctor complaining of migraine headaches and anxiety, as well as chronic lower back pain.

In August 2017, Wills completed an SSA function report, which asked "how [his] illnesses, injuries, or conditions limit[ed] his abilities," as part of his effort to obtain DIB in which he stated the following. He was able to cook daily and cut the grass, use farming equipment, and take out the trash so long as it was not too heavy. He went out a few times per day, both on foot and by car. He engaged in hobbies like fishing, hunting, and camping but "not very often" since his pain began in December 2015. He also engaged in social activities "daily."

In June 2019, in connection with a claim that Wills had submitted to Metropolitan Life Insurance Company ("Metlife") for disability benefits based on chronic back pain, Dr. Dope Adewunmi opined that Wills's physical condition "supported functional limitations" and that his activities should be limited but ultimately concluded that "[r]estricted full time work is supported." Among other reasons for coming to this conclusion, Dr. Adewunmi found that Wills had "no specific limitations for reaching to the front and side at desk level, fine finger movements, keyboarding, and eye-

hand movements" and that Wills "should be able to sit continuously with the ability to shift positions when seated."

In January 2019, Wills went to the doctor again for migraines, neck pain, back pain, and other complaints. He underwent a spinal tap in February 2019. In April 2019, Wills reported experiencing headaches, pain in his left arm, neck pain, and back pain that became "worse over the last 3 months." However, an exam indicated that his "gait" and "posture," as well as the "strength [of his] upper and lower extremities," were "normal."

In September 2021, an examiner issued the initial Disability Determination Explanation ("DDE") for Wills's claim. The DDE reported that Wills could perform occasional lifting of up to 20 pounds and frequent lifting of up to 10 pounds; he could "[s]tand and/or walk" with normal breaks for 4 hours in an 8-hour workday and sit with normal breaks for 6 hours in an 8-hour workday; and he could "[o]ccasionally" climb ramps and stairs. However, the DDE stated that Wills was limited in his ability to "[p]ush and/or pull" with respect to his left leg; he should "[a]void concentrated exposure" to humidity, vibration, and extreme cold; and he should "[a]void all exposure" to "hazards" like "machinery [and] heights." Ultimately, the DDE concluded that Wills was not disabled, and although his ability to perform past relevant work had not been determined, he could "adjust to other work."

Wills requested an ALJ hearing for his claim, and it was held in May 2019. After reminding the ALJ of his history of impairments

and surgeries, Wills testified that, in the past, he worked as a groundman, lineman, and foreman for an electric company, performing tasks like climbing polls and stretching wires. Later, he worked an industrial cleaning job where he "climbed around in" and cleaned cooling towers. He also worked as an electrician for a period of three or four months.

Wills also testified that his back was the most severe pain, extending down his left leg. He testified that the pain felt like "fire," was concentrated mostly in his hip, and occurred every time he stood up and moved around. While the pain would subside when he laid down, it would start right away when he started walking. When he was sitting or lying down, the pain was "not that bad [if he could] get all the weight off" his left leg. On a scale of zero to ten, his pain was about a "five or a six" when standing and walking and a "four or a five" when sitting.

Wills testified that he also suffered from severe headaches, which had started a year prior and, at one point, occurred every day before the doctors drained his spinal fluid. Thereafter, they occurred once a week and sometimes lasted all day. Once every two weeks, he had a headache that was an eight on a pain scale of zero to ten and was "so bad that [he could] barely open [his] eyes." He also had trouble seeing out of his left eye ever since the headaches began.

Wills testified that he had experienced tingling in his left arm every day for a couple of years and had been unable to pick up a gallon of milk with his left arm for the past six to eight months. His

nerve pain was a "six or seven" on the zero to ten scale, but it was not more severe than his back pain because it was "all tied together" and was "more of a body pain." He could lift 20 pounds, but not 50 pounds, with his right arm, sit for 20 to 30 minutes, and stand for 20 to 30 minutes without "proppin[g]" himself up. He could take care of his personal needs, such as showering, getting dressed, shaving, and feeding himself, without assistance. Wills testified that his pain medication did not alleviate his back pain.

Before the hearing was closed, a vocational expert testified that many several "light, unskilled" jobs existed in the national economy for a person with Wills's limitations.

In June 2019, the ALJ found that Wills was not disabled. The ALJ found that Wills had not engaged in substantial gainful activity since December 15, 2015, the alleged onset date of his disability, and had "severe impairments [including] cardiomyopathy; obesity; moderate bilateral carpal tunnel syndrome . . . lumbar foraminal narrowing; and [a] history of surgeries." However, the ALJ found that none of these impairments met "or medically equal[ed] the severity of one of the listed impairments" found in the Social Security Regulations. Wills had the residual functional capacity ("RFC") "to perform light work" with certain limitations:

> [S]tanding and walking limited to four hours total, sitting up to six hours, no operation of foot controls; no climbing stairs, ropes, ladders, or scaffolds; frequently balance and occasional stopping, but no kneeling, crouching, or crawling; occasionally reach

overhead bilaterally; frequent, but not constant, gross manipulation, no work around excessive vibration, unexpected heights, or hazardous machinery; standing and walking no more than 4 hours in an 8-hour workday and sitting up to 6 hours in an 8-hour workday; no work in extreme temperatures or extreme humidity.

In assessing Wills's RFC, the ALJ stated that, in considering his symptoms, it must first determine "whether there is an underlying medically determinable . . . impairment . . . that could reasonably be expected to produce [Wills's] pain or other symptoms." Next, the ALJ stated that it must then evaluate "the intensity, persistence, and limiting effects of [Wills's] symptoms to determine the extent to which they limit [Wills's] functional limitations." The ALJ noted that Wills had alleged chronic back pain, daily hip and leg pain, and left arm tingling and that the evidence showed a history of treatment for these impairments. Nevertheless, the ALJ found that Wills's statements concerning the "intensity, persistence, and limiting effects" of those impairments were not "consistent with the objective medical evidence." The ALJ concluded that, "[w]hile it is reasonable [that Wills] may experience some symptoms that would cause some exertional and non-exertional limitations, the objective medical evidence does not support a complete inability to work." The ALJ then reviewed the medical evidence, Wills's function report, and two doctor's

opinions and determined that Wills was unable to perform past relevant work but found that he could perform other work.

Wills requested review of the ALJ's decision, but his request was denied by the SSA's Appeals Council.  Wills then filed a complaint in the district court requesting review of the ALJ's decision.  Wills argued in his memorandum in support of disability that the ALJ (1) improperly applied the pain standard and (2) failed to accept Wills's subjective testimony regarding his pain.  The Commissioner responded, arguing that the ALJ applied the proper pain standard and that substantial evidence supported the ALJ's decision.  The magistrate judge affirmed the  decision, finding that it was properly based on the pain standard and that substantial evidence supported the ALJ's decision to discredit Wills's testimony about his pain.[1]

Wills timely appealed the decision of the district court.

## II.     Discussion

On appeal, Wills argues that the ALJ "improperly applied the Eleventh Circuit['s] pain standard."[2]

---

[1] The parties consented to the magistrate judge's jurisdiction.

[2] In his reply brief, Wills contends, for the first time on appeal, that the ALJ's decision was not sufficiently detailed to permit appellate review, and that the ALJ's reasons for discrediting his subjective complaints were not supported by substantial evidence.  Because Wills raises these arguments "for the first time

"In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual seeking DIB bears the burden of proving that he is disabled. *Moore*, 405 F.3d at 1211.

The ALJ uses a "five-step, sequential evaluation process to determine whether a claimant is disabled." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); 20 C.F.R. § 404.1520(a)(4)(i)-(v). At steps four and five, the ALJ must determine whether the claimant has the RFC to perform his past relevant work and, if not, any other work. 20 C.F.R. § 404.1520(a)(4)(iv)-(v). RFC is an assessment of a claimant's ability to do work despite his impairments. *Id.* § 404.1545(a)(1). In formulating an RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). The ALJ examines all relevant medical and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources" and

in his reply brief, [they are] not properly before us." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003).

"descriptions and observations" by the claimant and others of his limitations, including limitations resulting from pain. *Id.* § 404.1545(a)(3).

A three-part "pain standard" applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires a claimant to "satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition, and (2) either (a) objective medical evidence confirming the severity of the alleged pain" arising from that condition, or (b) a showing "that the objectively determined medical condition" is of such a severity that it "can be reasonably expected to give rise to the claimed pain." *Id.*

Here, the ALJ correctly stated the pain standard. The ALJ stated that it must determine "whether there is an underlying medically determinable . . . impairment . . . that could reasonably be expected to produce [Wills's] pain or other symptoms." The ALJ then found that, while it was "reasonable [that Wills] may experience some symptoms that would cause some exertional and non-exertional limitations," the extent of the pain he alleged was inconsistent with the objective medical evidence. Thus, the ALJ concluded that "the objectively determined medical condition" was not of such a severity that it could "reasonably be expected to give rise to [Wills's] claimed pain." *Wilson*, 284 F.3d at 1225. Thus,

the ALJ cited and properly relied upon this Court's pain standard when reaching the conclusion that Wills was not disabled.[3]

Because the ALJ properly stated and applied this Court's pain standard, we affirm.

AFFIRMED.

---

[3] In his initial brief, Wills asserts, in the same section he discusses the ALJ's application of the pain standard, that the ALJ "failed to accept [Wills's] testimony of pain" and that "[w]hen the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision. . . . Implicit in this rule is the requirement that such articulation of reasons by the [Commissioner] be supported by substantial evidence." However, Wills does not elaborate and fails to explain why the ALJ's decision to discredit his testimony was not supported by substantial evidence. Because Wills makes "no arguments and cites to no authorities to support [this] conclusory assertion[]" he has "abandoned in [his] initial brief any argument" he has that the ALJ's decision to discredit his testimony was not supported by substantial evidence. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014). In any event, even if he had not abandoned this argument, the ALJ discussed the medical evidence in detail and why it was inconsistent with Wills's testimony about his pain.